### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

RANDY PEREZ

CIVIL ACTION NO. 19-1124

SECTION P

VS.

JUDGE TERRY A. DOUGHTY

RICHLAND PARISH DETENTION
CENTER, ET AL.

MAG. JUDGE KAREN L. HAYES

### REPORT AND RECOMMENDATION

Plaintiff Randy Perez, a prisoner at Elayn Hunt Correctional Center proceeding pro se and in forma pauperis, filed the instant proceeding on August 23, 2019, under 42 U.S.C. § 1983. He names the following defendants: Richland Parish Detention Center ("RPDC"), Warden Ricky Scott, Chief of Security Shaw, and the Louisiana Department of Public Safety and Corrections ("LDPSC").[1]  For reasons that follow, the Court should dismiss Plaintiff's claims.

### Background

Plaintiff alleges that, on June 23, 2019, eight or more inmates at RPDC attacked him in his dormitory and almost stabbed him to death.  [doc. #s 1, p. 3; 8, pp. 8, 11].  Plaintiff suffered cracked teeth, "excessive trauma," "post-traumatic stress," and "life-long damage to the endo cannabinoid system (ECS) a vast, body-wide network of trillions of cannabinoid receptors, heavily concentrated in the brain [which] . . . sends excessive stress that runs down the length of Plaintiff's spine and through his entire nervous system . . . ."  [doc. # 8, pp. 9, 23].

Plaintiff recounts a series of other attacks he was not involved in but which, from what he appears to allege, demonstrate that defendants were aware of a general danger in his dormitory.

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

*Id.* at 4-6.  He alleges that "staff" never searched the dormitory for weapons.  *Id.* at 4, 6, 14.  He alleges that inmates at RPDC were at risk of being stabbed because "of short-hand with staff and the laziness of" RPDC, Scott, and Shaw.  *Id.* at 10.  He also claims that defendants failed "to provide for internal and perimeter security . . . ."  *Id.* at 22.

On June 24, 2019, Plaintiff was placed in "lockdown" and then in a "holding tank," where he was intermittently deprived of showers, use of a telephone, use of outgoing mail, "use of medical staff for heat rash," time outside, clean water, clean clothes, and ice:

> ° From June 23, 2019, to June 29, 2019, Plaintiff lacked showers, an opportunity to call his family, clean clothes, clean water, ice, and medical assistance.  *Id.* at 12-14.  Plaintiff informed a captain that the water was making him sick and hurting his mouth.  *Id.* at 13.  Lockdown was "very hot."  *Id.* at 12.
>
> ° On June 28, 2019, Plaintiff's body began breaking "out with heat rash . . . ."  *Id.* at 14.
>
> ° On June 30, 2019, Plaintiff "got a chance to wash clothes, take a shower, and use the phone for the first time . . . ."  *Id.*
>
> ° From July 1, 2019, to July 3, 2019, Plaintiff lacked showers, an opportunity to use a telephone, clean clothes, and medical assistance.  *Id.*
>
> ° On July 4, 2019, Plaintiff showered and washed his clothes, but he was not permitted to use a telephone.  *Id.* at 14-15.
>
> ° The offending conditions continued from July 5, 2019, to July 8, 2019.  *Id.* at 15, 17.
>
> ° On July 9, 2019, Plaintiff showered, cleaned his clothes, and used a telephone, but he lacked clean water and ice.  *Id.* at 17.
>
> ° On July 10, 2019, Plaintiff showered, cleaned his clothes, received clean water, and received ice, but he was unable to use a telephone and he "still" lacked medical care for his mouth and heat rash.  *Id.* at 17-18.
>
> ° On July 11, 2019, Plaintiff showered, used the telephone, and received clean water and ice.  *Id.* at 18.
>
> ° The offending conditions continued from July 12, 2019, to July 13, 2019.  *Id.* It was "very, very, very, very hot."  *Id.*

° On July 14, 2019, Plaintiff used the telephone and showered, but he lacked access to clean water and medical assistance. *Id.*

° The offending conditions continued from July 15, 2019, to July 16, 2019. *Id.* at 18-19.

° On July 17, 2019, Plaintiff showered and used the telephone. *Id.* at 19.

° On July 19, 2019, Plaintiff showered and called his family. *Id.* at 19-20.

° On July 22, 2019, Plaintiff was transferred to another correctional center. *Id.* at 20.

Plaintiff claims that he required a telephone in lockdown to call his family. *Id.* at 24. He needed to send mail to the LDPSC, but he does not explain why. *Id.* Further, he needed to send mail to the United States District Court, Eastern District of Louisiana, because he was litigating "a civil action No. 19-10767 . . . ." *Id.* at 24-25.

The conditions in which he was confined caused Plaintiff to suffer "excessive trauma," "post-traumatic stress," and "life-long damage to the Endo Cannabinoid System . . . ." *Id.* at 16.

As above, the attacking inmates cracked Plaintiff's teeth, and Plaintiff claims that he never received care for that injury at RPDC because, in lockdown, he lacked access to the iPad inmates use to request care. *Id.* at 23-24. He adds: "When medical would come she would say you need to be on the paper and would walk off because [RPDC] did not care for the inmates. [sic]." *Id.*

Plaintiff received medical care at his new facility. *Id.* at 20. A dentist treated him on July 31, 2019. *Id.* Subsequently, a dentist "pulled one tooth out and has 3 more teeth to pull out . . . ." [doc. # 10].

Plaintiff claims that defendants breached a contract under "39:1800.4." [doc. # 8, p. 22].

3

Plaintiff claims that RPDC does not "provide proper food for the inmates." [doc. # 8, p. 7]. "On Sundays . . . the detention center gives the inmates . . . a brown bag which has a bag of chips, two sandwiches, and an oatmeal cookie . . . ." *Id.* at 6. "For lunch the inmates get chips with cheese and chili and a teaspoon of vegetables which is very small." *Id.* at 6-7.

Plaintiff seeks: (1) reimbursement for his court costs; (2) an injunction to "change the food at" RPDC; (3) safety for staff and inmates; (4) $3,000,000.00 in compensation for his post-traumatic stress and trauma; and (5) parole.

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] See *Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra.*

Likewise, a complaint fails to state a claim on which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride*

*Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

## 2. Richland Parish Detention Center

Plaintiff names RPDC as a defendant. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24. RPDC does not qualify as a juridical person. Accordingly, the Court should dismiss Plaintiff's claims against RPDC.

## 3. Louisiana Department of Public Safety and Corrections

Plaintiff names the LDPSC as a defendant. Liability under 42 U.S.C. § 1983 only applies to "person[s]" who deprive others of rights secured by the Constitution. "[N]either a State nor its

officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Likewise, the LDPSC is not a "person" under Section 1983. *Washington v. Louisiana*, 425 F. App'x 330, 333 (5th Cir. 2011) ("The State and DPSC are not persons . . . ."); see *Carrere v. May*, 2016 WL 6684796, at *2 (W.D. La. Sept. 9, 2016), report and recommendation adopted, 2016 WL 6684247 (W.D. La. Nov. 14, 2016) ("[T]he Louisiana Department of Corrections, a state agency, is not a 'person' within the meaning of 42 U.S.C. § 1983."). Here, accordingly, the Court should dismiss Plaintiff's claims against the LDPSC.

**4. Injunctive Relief**

Plaintiff asks the Court to "change the food" at RPDC and to provide "safety for staff and inmates" at RPDC. [doc. #s 1, p. 4; 8, p. 26]. Plaintiff, however, is no longer confined at RPDC. Thus, the Court should deny these requests for relief as moot.[3] See *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (determining that an inmate's transfer to a different unit rendered claims for declaratory and injunctive relief relating to environmental conditions at the original unit moot); see also *North Carolina v. Rice*, 404 U.S. 244, 246 (U.S. 1971) ("[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.").

**5. Standing**

As above, Plaintiff seeks relief on behalf of staff and inmates at RPDC. For example, he claims that defendants fail to provide proper food for inmates. [doc. # 8, p. 7]. He also claims

---

[3] Plaintiff does not allege or suggest that there is a reasonable, demonstrable probability that he will be transferred back to RPDC. See *Hardwick v. Brinson*, 523 F.2d 798, 800 (5th Cir. 1975); *Murphy v. Hunt*, 455 U.S. 478, 482 (1982).

that defendants "knew of and disregarded the substantial risk of serious harm to employees and inmates housed at [RPDC]." *Id.* at 10.

Plaintiff lacks standing to pursue relief on behalf of other inmates and members of the RPDC staff. Persons claiming a deprivation of constitutional rights are required to show a deprivation of their personal rights, as opposed to the rights of others. *Coon v. Ledbetter*, 780 F.2d 1158, 1159 (5th Cir. 1986); *Barrows v. Jackson*, 346 U.S. 249, 255 (1953) ("Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party."). In *Resendez v. Texas*, 440 F. App'x 305, 306 (5th Cir. 2011), for example, the court held that, "to the extent that [the plaintiff] seeks to raise issues regarding the illegal confinement of other prisoners . . . , he lacks standing to bring those claims."); see *Kennedy v. Dallas Police Dep't*, 2007 WL 30260, at *2 (N.D. Tex. Jan. 4, 2007) (plaintiff may bring a Section 1983 action only for deprivations he suffered).[4]

In addition, Plaintiff may not act as counsel for others. See, e.g., *Wade v. Carrollton–Farmers Branch Indep. Sch. Dist.*, 2009 WL 2058446, at *2 (N.D. Tex. July 14, 2009) ("[I]ndividuals who do not have a law license may not represent other parties even on a next friend basis."). Parties can represent themselves or they can be represented by an attorney; they cannot be represented by a non-lawyer. See *Gonzales v. Wyatt*, 157 F.3d 1016, 1021 (5th Cir. 1998) (citing *Eagle Associates v. Bank of Montreal*, 926 F.2d 1305, 1308-09 (2d Cir. 1991) (reviewing authority)).

---

[4] See also *Gregory v. McKennon*, 430 F. App'x 306, 310 (5th Cir. 2011) (holding that the plaintiff "would lack standing to seek § 1983 damages for violations of other prisoners' rights . . . ."); *Doe ex rel. Doe v. Beaumont Indep. Sch. Dist.*, 173 F.3d 274, 281 (5th Cir. 1999), on reh'g en banc sub nom. *Doe v. Beaumont Indep. Sch. Dist.*, 240 F.3d 462 (5th Cir. 2001) ("[W]hen making a determination of standing[,]" trial courts "are exhorted to consider . . . whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.").

As Plaintiff lacks standing to pursue relief on behalf of others, the Court should dismiss these claims.

## 6. Parole

Plaintiff seeks parole, but he does not explain why. This request for relief, unaccompanied by any claim or allegation, is entirely conclusory.[5] Accordingly, the Court should deny this request.

## 7. Failure to Protect

Plaintiff alleges that, on June 23, 2019, eight or more inmates at RPDC attacked him in "Dorm H" and almost stabbed him to death. [doc. #s 1, p. 3; 8, pp. 8, 11]. He suffered cracked teeth, "excessive trauma,"[6] "post-traumatic stress," and "life-long damage to the endo cannabinoid system . . . ." [doc. # 8, pp. 9, 23].

Plaintiff recounts a series of other attacks he was not involved in but which, from what Plaintiff appears to allege, demonstrate that defendants were aware of a general danger in H-- Dorm:

   ° On June 20, 2019, two inmates stabbed each other.

   ° On June 21, 2019, inmates beat another inmate, and the victim "had to beat the door down to get help from the employees . . . ."

   ° On June 21, 2019, inmates "pulled knives out on" Inmate Wofford. Wofford requested assistance from staff, but staff told him to stay in the dormitory. Wofford "moved to another spot and stood up all night."

---

[5] A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. To reiterate, a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662.

[6] Plaintiff does not identify the trauma or otherwise clarify whether it was mental/emotional or physical.

° On June 22, 2019, inmates "went after" Wofford. Wofford informed "the night employees" that the inmates were trying to kill him.

*Id.* at 4-6. On July 19, 2019, he informed his family that "inmates are still getting stabbed . . . ." *Id.* at 20.

To state a claim, Plaintiff must allege that a defendant's inaction amounted to deliberate indifference. That is, he must allege that a defendant "knew of and disregarded a substantial risk of serious harm." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017).

Plaintiff seeks relief from Warden Scott and Chief of Security Shaw. "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994). "'[A] plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation.'" *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (quoting *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)).

Here, Plaintiff does not plausibly allege that Scott or Shaw affirmatively participated in failing to protect him from the attacking inmates. He alleges, repeatedly, that Scott and Shaw "knew of and disregarded the substantial risk of serious harm to employees and inmates . . . ." [doc. # 8, p. 10]. Scott and Shaw have "one hundred % knowledge and knowing the information and facts that has taken place at [sic]" RPDC. *Id.* at 7. However, Plaintiff does not identify what Scott and Shaw knew. For instance, he does not allege that Scott or Shaw knew that any inmate or group of inmates were substantially likely to attack him or that any inmate or group of inmates

posed a substantial risk of serious harm to every inmate in H-Dorm.[7]  He also does not allege

that Scott or Shaw knew of the attacks on June 20, 21, and 22.[8]

   Further Plaintiff does not allege, for example, that the prior attacks in H-Dorm were so

similar to the attack on Plaintiff and so numerous that (1) Shaw or Scott must have known about

them and (2) that the risk of harm to Plaintiff was therefore obvious.  In *Farmer v. Brennan*, 511

U.S. 825, 842 (1994), the Court explained that a risk may be obvious when inmate attacks were

"longstanding, pervasive, well-documented, or expressly noted by prison officials in the past . . .

."  An official may also be aware of an obvious danger by knowing that "rape was so common

and uncontrolled that some potential victims dared not sleep [but] instead . . . would leave their

beds and spend the night clinging to the bars nearest the guards' station . . . ."  *Id.* at 843-44.

   Plaintiff also fails to plausibly allege that Scott or Shaw implemented an unconstitutional

policy, practice, custom, or procedure that caused his injuries.  By way of preamble, Plaintiff's

---

[7] In *Jacquez*, 801 F.2d at 792, where an administrator of an inmate's estate sued supervisory state prison officials for failing to protect the inmate, the court found that the administrator failed to state a claim because the administrator did "not allege that a warning was received, and omit[ted] any explanation of how or in what way the defendants 'knew' or 'intended' the attack."  The court added, "The gravamen of the plaintiff's claim appears simply to be that the defendants breached their duty to protect the decedent."  It reasoned further: "nowhere in this pleading does the plaintiff cite any conduct (or specific omissions) that would causally link the defendants to decedent's death.  In order to successfully plead a cause of action in § 1983 cases, plaintiffs must enunciate a set of facts that illustrate the defendants' participation in the wrong alleged."

[8] Plaintiff  implies that Scott and Shaw must be aware of inmate-on-inmate violence in Dorm H because it is so common.  However, this additional, generalized allegation does not confer additional plausibility on Plaintiff's claims because, if Plaintiff is alleging that a defendant affirmatively participated in an unconstitutional act, he must allege that the defendant was deliberately indifferent to *his* safety.  See *Williams v. Martin*, 570 F. App'x 361, 365 (5th Cir. 2014) (finding that the Williams did not state a claim because he "alleged only that defendants failed to curb abuse of prisoners" and did not allege that "prison officials acted with deliberate indifference to [his] safety.");  *Silva v. Moses*, 542 F. App'x 308, 311 (5th Cir. 2013) ("the vague contention by Silva that, although the defendants knew of previous violent incidents, they declined to take unspecified protective measures to prevent future attacks such as the one on him, does not show that any risk to Silva was clear to the officers.").

theories of causation meander; the undersigned endeavors to construe them liberally and in Plaintiff's favor.[9]

He first alleges that "staff" never searched the dormitory for weapons following the stabbing on June 20, 2019. [doc. # 8, pp. 4, 6, 14]. Liberally construed, it seems Plaintiff is attempting to allege that Scott, Shaw, or both implemented a policy, practice, or custom of inaction: failing to search for, and confiscate, known weapons or other instrumentalities used in attacks. Plaintiff, however, fails to plausibly allege that there was such a practice or custom at RPDC. He does not allege how often employees failed to search for weapons or, for instance, how many other, similar attacks were caused by a failure to search for and confiscate weapons.[10]

---

[9] Plaintiff does not claim that Scott or Shaw failed to train or supervise their subordinates.

[10] See *Balle v. Nueces Cty., Texas*, 690 F. App'x 847, 852 (5th Cir. 2017) ("Although an official policy usually exists in the form of written policy statements, ordinances, or regulations, . . . it may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy. . . . [A] complaint's description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.") (internal quotation marks and quoted sources omitted); *Peterson v. City of Fort Worth, Tex.,* 588 F.3d 838, 850-51 (5th Cir. 2009) (finding that twenty-seven complaints of excessive force against city police officers over a four-year period did not suggest a pattern so common and well-settled as to constitute a custom that fairly represented an official policy that was permissive of excessive force and noting: "Where prior incidents are used to prove a pattern, they must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees. . . . A pattern requires similarity and specificity; [p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question. A pattern also requires sufficiently numerous prior incidents, as opposed to isolated instances.") (internal quotation marks and quoted sources omitted); *Pineda v. City of Houston,* 291 F.3d 325 (5th Cir. 2002) (finding that eleven incidents of warrantless entry did not support a pattern of unconstitutional warrantless entry because "[e]leven incidents each ultimately offering equivocal evidence of compliance with the Fourth Amendment cannot support a pattern of illegality in one of the Nation's largest cities and police forces."); "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992).

Moreover, even assuming the existence of such a practice, this ostensible claim is implausible because Plaintiff does not allege that the inmates who attacked him injured him with a weapon . . . much less a weapon used in one of the three prior attacks he chronicles.  In other words, any practice of foregoing searching for weapons following attacks did not cause the attack on Plaintiff.

Plaintiff also suggests that he was attacked because: "the inmates housed at [RPDC] is on synthetic marijuana that makes the person freak out, throw up, pee on his or her self, have a heart attack or have seizures.  Inmates had heroin,  methadone, meth, cocaine, and other substances and cell phones in [RPDC]. [sic]."  [doc. # 8, pp. 11, 15].  Plaintiff, however, does not allege that the inmates who attacked him were using any of these substances, that Scott or Shaw knew that the attacking inmates would attack him if they used these substances, that Scott or Shaw maintained a custom of failing to search for these substances, or that these substances caused sufficiently numerous attacks similar to the attack on Plaintiff.

Next, Plaintiff alleges that inmates were at risk of being stabbed because Scott and Shaw were lazy.  That Scott and Shaw were lazy, however, simply invites the question, what did Scott and Shaw do or fail to do for Plaintiff to label them lazy?  Plaintiff also alleges that defendants failed "to provide for internal and perimeter security . . . ."  [doc. # 8, p. 22].  By this ill-defined allegation, Plaintiff invites the question, what internal or perimeter security did defendants fail to provide?  He simply rephrases the moniker, 'failure to protect,' to 'failure to provide security.'  See *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986) (reasoning, where the plaintiff alleged that the defendants "knew of the misconduct by the prison inmates and prison guards and did nothing to stop it and in fact condoned such conduct[,]" that the plaintiff failed to "cite any conduct (or specific omissions) that would causally link the defendants to decedent's death.").

13

These two theories of causation are entirely conclusory.

Plaintiff alleges that inmates at RPDC were at risk of being stabbed because "of short-hand with staff . . . ."  [doc. # 8, p. 10].  First, Plaintiff does not plausibly describe a policy, practice, procedure, or custom of understaffing and, even if he did, he does not allege that such a policy reflected deliberate indifference to known consequences because he does not identify a sufficient number of other, similar attacks at RPDC (or Dorm H) caused by understaffing.[11] Assuming again that Plaintiff plausibly identified a policy or practice of understaffing, and even if he alleged that Scott, Shaw, or both implemented it with deliberate indifference, his claim remains conclusory.  He does not approximate how many staff were present in his dormitory when he was attacked, how many staff monitored his dormitory, how many staff were close enough to protect him from harm, or how many personnel capable of protecting Plaintiff were employed at RPDC.  He also fails to allege that *he* was attacked because the facility was understaffed; instead, he alleges that *other inmates* were at risk of being *stabbed*.

Accordingly, the Court should dismiss these failure-to-protect claims.[12]

---

[11] In *Jason v. Tanner*, 938 F.3d 191, 197 (5th Cir. 2019), where "having only two guards making rounds and relying on other guards peering out of window" caused the risk to the plaintiff, the court reasoned that the "situation might have been a mere reality of the prison's budget."  The court added: "[T]here was no repeated pattern of violations. True, there had been three yard fights with brooms and one with a mop. Now there's been one with a yard tool. But prison fights are lamentably common. And three yard fights with brooms and one with a mop just aren't enough to constitute a pattern."  *Id.*  "[E]ven a repeated pattern of violence isn't by itself enough to prove deliberate indifference."  *Id.* at 198.   Likewise, in *Walker v. Upshaw*, 515 F. App'x 334, 339 (5th Cir. 2013) (cited source omitted), the court recognized that "demonstrating that a policy reflects deliberate indifference generally requires that a plaintiff demonstrate at least a pattern of similar violations."

[12] The undersigned is sympathetic to Plaintiff's plight and, as the court stated in *Brown v. Harris Cty., Texas*, 409 F. App'x 728, 731 (5th Cir. 2010), the undersigned does not "suggest that jail officials have no duty to protect the inmates in their custody from assault by other inmates."  "But maintaining safe and orderly prison is a difficult task, and even the most vigilant oversight

**8. Conditions of Confinement**

On June 24, 2019, following the attack, Plaintiff was placed in "lockdown" and then in a "holding tank," where he was intermittently deprived of showers, time outside, clean water, clean clothes, and ice.

"While the Constitution does not require that custodial inmates be housed in comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded 'humane conditions of confinement' and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care." *Herman*, 238 F.3d at 664 (quoting *Farmer*, 511 U.S. at 825). To establish an Eighth Amendment violation, a prisoner must demonstrate that a prison official was deliberately indifferent to conditions that resulted in the "extreme deprivation[,]" *Shannon v. Vannoy*, 682 F. App'x 283, 285 (5th Cir. 2017), of "the minimal civilized measure of life's necessities."[13] *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). To establish deliberate indifference, the prisoner must show that the official knew of and disregarded an excessive risk to inmate health or safety; the official must have been both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must have drawn the inference. *Farmer*, 511 U.S. at 837.

"*Some* conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or

---

may not be able to prevent every incident." *Id.*

[13] The deprivation alleged must be, objectively, sufficiently serious. *Farmer*, 511 U.S. at 834. This standard is not static: the inquiry is whether the conditions are contrary to "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotation marks and quoted source omitted).

exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (internal quotation marks and quoted source omitted).[14]   However, "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* at 305.

As above, Plaintiff claims that he could not go outside for twenty-nine days.  He does not specify, for instance, whether he lacked recreation, sunlight, fresh air, or exercise.  While recreation and exercise are certainly identifiable life needs,[15] Plaintiff's claim is conclusory.  He does not allege that he could not exercise or engage in recreation in his cell, and his indoor confinement continued only twenty-nine days.[16]   See *Ruiz*, 679 F.2d at 1152 ("Of particular importance in determining an inmate's need for regular exercise are the size of his cell, the

---

[14] "Such things as food, sleep, clothing, shelter, medical attention, reasonable safety, sleep, and exercise have been recognized by courts as basic physical human needs subject to deprivation by conditions of confinement." *Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 678 (M.D. La. 2007) (citing cases).

[15] See *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir. 1982), amended in part, vacated in part, 688 F.2d 266 (5th Cir. 1982) (citing, favorably, other courts' opinions that "inmates need regular exercise to maintain reasonably good physical and psychological health.").

[16] See *Lewis v. Smith*, 277 F.3d 1373 (5th Cir. 2001) (finding a similar claim "meritless because it [was] premised on the erroneous assumption that [the plaintiff] had an absolute right to exercise or recreation."); *Carter v. Hubert*, 452 F. App'x 477, 478-79 (5th Cir. 2011) ("In regard to his unconstitutional conditions of confinement claims that his placement in a restrictive cell program for seven days at a time, for a total of 26 days, resulted in a lack of exercise, deprivation of meals, and flu-like symptoms due to a severely cold cell, Carter has not demonstrated that prison officials violated his Eighth Amendment rights."); *Jones v. Diamond*, 594 F.2d 997, 1013 (5th Cir. 1979), on reh'g, 636 F.2d 1364 (5th Cir. 1981) ("Our cases have never held that convicted prisoners have a constitutional right to outdoor exercise."); *Hernandez*, 522 F.3d at 560-61 (finding, where the plaintiff alleged a denial of outdoor and out-of-cell exercise for thirteen months, that even if there was a "fact issue as to whether [the plaintiff] suffered from muscle atrophy, stiffness, loss of range of motion, and depression, there [was] nonetheless no indication these conditions posed a substantial risk of serious harm.").

amount of time the inmate spends locked in his cell each day, and the overall duration of his confinement.") (internal footnotes omitted).  Plaintiff does not claim that his inability to enjoy time outside deprived him of a minimal civilized measure of life's necessities or otherwise amounted to an extreme deprivation.

Plaintiff claims that he was intermittently deprived—for periods up to six days—of showers, clean water, and clean clothes.  These claims could implicate a need to maintain adequate hygiene and health.  His inability to shower could also implicate a need to regulate body temperature in the summer months.  Speculation aside, Plaintiff does not allege that these conditions deprived *him* of any identifiable life need.  Even to the extent he did, the frequency and duration of these conditions do not reflect extreme deprivations, and Plaintiff fails to allege that the conditions exposed him to a substantial risk of serious harm.[17]  See *Brumley v. Livingston*, 459 F. App'x 470, 472 (5th Cir. 2012) (affirming dismissal of a plaintiff's claim that he was denied showers "because he failed to properly allege that he was subjected to a substantial risk of harm.").  Moreover, while he claims that he required clean water to brush his teeth and care for his injured teeth/mouth, he does explain how, why, or to what extent the water was unclean.  By extension, he does not allege how the unclean water impacted his ability to brush his teeth or care for his injuries.  This deprivation, as Plaintiff describes it, was not extreme.

---

[17] See *Hamilton v. Lyons*, 74 F.3d 99, 106 (5th Cir. 1996) (finding the denial of showers for a three-day period de minimis); *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982) (citing with tacit approval several courts' opinions that "one or two showers a week is sufficient to satisfy constitutional requirements."); c.f. *Bradley*, 157 F.3d at 1025 (finding that a plaintiff stated a claim when he alleged that he was unable to bathe for several months, that he was forced to clean himself with toilet water, and that the unhygienic conditions resulted in a fungal infection requiring medical attention).

Plaintiff's allegation that he was deprived of clean water could also implicate a need for adequate hydration and a need for healthy drinking water.  As above, however, Plaintiff does not allege that he lacked adequate hydration.  Moreover, because he does not explain why, how, or to what extent the water was unclean, he does not describe an extreme deprivation of healthy drinking water.

Finally, Plaintiff claims that he was intermittently deprived—once for seventeen days—of ice for approximately one month.  He suggests, without elaboration, that he required ice to remain cool in the extremely hot lockdown cell.  Notably, however, he does not allege that defendants deprived him of his need to regulate his temperature (i.e. remain cool), he simply alleges that defendants deprived him of ice which, given the relatively transient periods in which he lacked ice, does not reflect an extreme deprivation of the need to regulate his body temperature.  Even to the extent the lack of ice amounted to an extreme deprivation, Plaintiff does not allege that the lack of ice exposed him to a substantial threat of serious harm.  While he alleges that he suffered a heat rash, this injury does not reflect serious harm or a substantial risk of further harm; in addition, Plaintiff does not allege that he suffered from a disability that rendered him particularly susceptible to harm from hot temperatures.

For these reasons, the Court should dismiss Plaintiff's claims.

The Court should also dismiss Plaintiff's claims because he seeks monetary compensation for these conditions, but he does not allege that the conditions caused him greater-than-de-minimis physical injury.[18]  Under 42 U.S.C. § 1997e(e), "No Federal civil action may be

---

[18] Plaintiff seeks injunctive relief but, as above, he lacks standing.  In addition, his requests for injunctive relief, as well as his request for "parole," are not related to his conditions-of-confinement claims.  While he also seeks reimbursement for court costs, this request is likewise unrelated to his conditions-of-confinement claims and, more important, is only a collateral matter rather than a request for relief.  See *Deus v. Allstate Ins. Co.,* 15 F.3d 506, 521 (5th Cir. 1994)

brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)."  "[I]t is the nature of the relief sought, and not the underlying substantive violation, that controls: Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury."  *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005).

Here, Plaintiff does not allege that he suffered a more-than-de-minimis physical injury—or any other injury compensable by monetary relief—because of the conditions under which he was confined.[19]  He does allege that he suffered a heat rash and pain in his mouth but, without more, these injuries are de minimis.  See *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (recognizing that the "physical injury required by § 1997e(e) must be more than de minimus [sic], but need not be significant.");  *Herron v. Patrolman No. 1*, 111 F. App'x 710, 713 (5th Cir. 2004) (holding that a "temporary increase of pain . . . is at most a *de minimis* injury that will not support a claim of mental or emotional suffering.").

Thus, even if Plaintiff stated plausible conditions-of-confinement claims, he only seeks compensatory relief for mental, emotional, and de minimis physical injuries.  Accordingly, the Court should dismiss these claims.

---

(reasoning that a request for costs is a collateral matter for purposes of finality and is not an independent claim "for relief essential to the outcome of the case as a whole.").

[19] As noted, Plaintiff maintains that he suffered damage to his "endo cannabinoid system."  [doc. # 8].  He describes it as "excessive stress" that runs through his entire nervous system.  He provides no indication that this stress manifested in physical injury.

**9. Access to a Telephone and Access to Outgoing Mail**

Plaintiff claims that, while in lockdown, he could only call his family on occasion.  [doc. # 8, p. 19].  He also claims that he was unable to send mail to the LDPSC and to the United States District Court, Eastern District of Louisiana, where he is litigating "a civil action No. 19-10767 . . . ."  *Id.* at 24-25.

Again, however, Plaintiff does not allege that, because he (periodically) lacked access to a telephone and lacked the means by which to send mail, he suffered a physical injury—or any other injury compensable by monetary relief.[20]  As he seeks only compensatory relief for mental and emotional injuries, the Court should dismiss these claims under 42 U.S.C. § 1997e(e).

**10. Medical Care**

Plaintiff claims that, in lockdown, he lacked medical care for his injured mouth/teeth and for his heat rash.  [doc. # 8, p. 23].  He lacked access to the iPad inmates use to request care.  *Id.* at 24.  He adds: "When medical would come she would say you need to be on the paper and would walk off because [RPDC] did not care for the inmates. [sic]."  *Id.*

A plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'"  *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)).  A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Farmer*, 511 U.S. at 847; see *Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim).  A plaintiff must

---

[20] Plaintiff does not allege that his inability to contact the United States District Court, Eastern District of Louisiana caused him to lose a claim for which he sought monetary relief.  In fact, *Randy M. Perez v. Louisiana State, et al.*, 2:19-cv-10767 (E.D. La. 2019), is still pending.

establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); see *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

Here, Plaintiff does not name the unidentified female from whom he sought care as a defendant. Rather, Plaintiff seeks relief only from Warden Ricky Scott and Chief of Security Shaw.[21]

Plaintiff alleges that he informed Shaw that he was not receiving medical care for his heat rash.[22] As noted, Plaintiff must demonstrate that he was exposed to a substantial risk of serious

---

[21] As above, the undersigned finds LDPSC and RPDC unamenable to suit.

[22] Plaintiff does not allege that he told Shaw he required care for his cracked teeth. Even assuming he did, Plaintiff received care for his teeth after he was transferred to a different

harm, which is "defined as harm 'so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.'" *Campbell v. Brown*, 2018 WL 6335832, at *1 (5th Cir. Dec. 4, 2018) (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)). Relatedly, Plaintiff must demonstrate that a defendant was deliberately indifferent to his "serious medical needs, which equates to the 'unnecessary and wanton infliction of pain.'" *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). A serious medical need is also defined as "'one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required.'" *Id.* (quoting *Gobert*, 463 F.3d at n. 12). Further, "'the essential test is one of medical necessity and not one simply of desirability.'" *Id.* (quoting *Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir. 1981)).

Here, Plaintiff's heat rash, as he describes it, was not a serious medical need. See *Tasby v. Cain,* 86 Fed. Appx. 745 (5th Cir. 2004) (finding that a skin rash did not amount to serious harm); *Wells v. Franzen*, 777 F.2d 1258, 1264 (7th Cir. 1985) (finding no indication that a rash was a serious medical need); *Davis v. Smith*, 2012 WL 1309253, at *3 (W.D. La. Mar. 12, 2012), report and recommendation adopted, 2012 WL 1309282 (W.D. La. Apr. 16, 2012) (finding it unlikely that a heat rash is a serious medical need and citing cases in support).[23]

Plaintiff does not allege that Scott knew he required care or that Scott was otherwise involved in depriving him of care. Similarly, Plaintiff does not allege that Shaw knew he required care for his cracked teeth or that Shaw was otherwise involved in depriving him of care for his cracked teeth.

---

facility, and Plaintiff does not allege that he suffered substantial harm as a result of the *delay* in receiving care. [doc. # 10].

[23] See also *Ellis v. Obi-Okoye*, 685 F. App'x 508 (8th Cir. 2017); *Ochs v. Thalacker*, 90 F.3d 293, 297 (8th Cir. 1996).

As above, "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille*, 977 F.2d at 929.

Here, Plaintiff does not allege that either defendant implemented a policy, custom, practice, or procedure of depriving inmates in lockdown of either iPads or other means by which to request care. In other words, Plaintiff does not allege that either defendant implemented a policy so deficient that it deprived him of his constitutional rights.

The Court should dismiss these claims.

## 11. Breach of Contract and Violation of LA. REV. STAT. § 39:1800.4

Plaintiff appears to allege that defendants either violated LA. REV. STAT. § 39:1800.4, breached a contract with the State of Louisiana, or both. [doc. # 8, pp. 1-4, 22]. Plaintiff does not explain (1) how defendants' alleged violation of LA. REV. STAT. § 39:1800.4 or breach of contract violated his federal or constitutional rights or (2) how his claims otherwise arise under federal law.

Plaintiff's claims are not cognizable under Section 1983. For instance, in *Mathews v. Bowie Cty., Tex.*, 600 F. App'x 933, 934 (5th Cir. 2015) (internal citations removed), where the plaintiff alleged that correctional officers violated a state statute, the court opined: "his conclusory allegations that his treatment violated the Texas Administrative Code are insufficient to establish § 1983 liability. Such action may constitute a breach of contract or violation of state law, but unless the conduct trespasses on federal constitutional safeguards, there is no constitutional deprivation." "[A] violation of a state statute alone is not cognizable under § 1983 because § 1983 is only a remedy for violations of federal statutory and constitutional rights." *Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005).

Plaintiff's breach-of-contract claim arises only under state law.  See *Braden v. Texas A & M Univ. Sys.,* 636 F.2d 90, 92 (5th Cir. 1981) ("Liability [under Section 1983] is imposed for subjecting a person to the deprivation of rights secured by the Constitution and laws of the United States, not for breach of contract.").  The Court should dismiss these claims without prejudice to Plaintiff's right to raise them before a state court.

### Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff Randy Perez's claims on behalf of staff and inmates at RPDC be **DISMISSED WITHOUT PREJUDICE** for lack of standing and as frivolous.

**IT IS FURTHER RECOMMENDED** that Plaintiff's claims concerning breach of contract and violation of LA. REV. STAT. § 39:1800.4 be **DISMISSED WITHOUT PREJUDICE** to Plaintiff's right to raise them before a state court.  The claims should otherwise be dismissed with prejudice and as frivolous.

**IT IS FURTHER RECOMMENDED** that Plaintiff's remaining claims and requests for relief be **DENIED AND DISMISSED WITH PREJUDICE** as frivolous.

**IT IS FURTHER RECOMMENDED** that Plaintiff's motions for discovery, [doc. #s 7, 10] be **DENIED AS MOOT**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the**

**proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 24th day of October, 2019.

Karen L. Hayes
United States Magistrate Judge